**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HARRY M., et al.,** | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:10-cv-00922** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF PUBLIC WELFARE, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

On May 10, 2013, the Court preliminarily approved Plaintiffs' proposed settlement of the above-captioned class action. (Doc. No. 79.) Pursuant to Federal Rule of Civil Procedure 23(e), the Court held a fairness hearing on July 12, 2013. (Doc. No. 86.) Plaintiffs now move the Court for final approval of the settlement agreement and the proposed award of attorneys' fees. (Doc. Nos. 81, 82.) For the reasons that follow, the Court will grant Plaintiffs' motions.

## I. BACKGROUND

Plaintiffs, a certified class consisting of residents of Pennsylvania who are deaf and enrolled in Defendants' Consolidated Waiver program (Doc. No. 14), filed the above-captioned class action in this Court on April 29, 2010. Plaintiffs' amended complaint alleged that Defendants, the Pennsylvania Department of Public Welfare (DPW), failed to provide equal access to waiver services to class members, and thus violated the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Doc. No. 6.) Specifically, Plaintiffs claimed that Defendants failed to provide class members with the necessary supports to effectively communicate with staff, housemates, supports coordinators, and others. (Doc. No. 73 at 2.)

On January 3, 2013, with the assistance of Magistrate Judge Mannion, the parties agreed to a proposed settlement of Plaintiffs' claims. (Doc. No. 71.) Plaintiffs subsequently moved the Court for approval of the proposed settlement agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. (Doc. No. 73.) On May 10, 2013, the Court preliminarily approved Plaintiffs' proposed settlement (Doc. No. 79), and, approximately two months later, held a fairness hearing on the proposed settlement (Doc. No. 86). Plaintiffs now move the Court to enter final approval of the proposed settlement and the proposed award of attorneys' fees.

Plaintiffs' core complaint in this action was that Defendants were failing to provide effective communication supports to deaf individuals enrolled in the Consolidated Waiver program. The proposed settlement agreement represents Defendants' efforts to address Plaintiffs' concerns. Befitting the complex nature of Plaintiffs' claims, the proposed settlement agreement is likewise complex. The essential terms of the settlement agreement are as follows: first, Defendant DPW will add a mandatory data field to its Home and Community Services database (HCSIS) that will identify any individual enrolled in Consolidated Waiver who is deaf. (Doc. No. 82 at 6; Doc. No. 82-3 ¶ 1.) Defendants will also appoint a Deaf Services Coordinator (DSC) no later than three months after the Court grants final approval to the proposed settlement agreement. (Doc. No. 82-3 ¶ 2.) The DCS's core duties include ensuring that individuals enrolled in the Consolidated Waiver who are identified as deaf receive adequate communication supports. (Doc. No. 82 at 6-7; Doc. No. 82-3 ¶ 2.) Moreover, to ensure that class members will receive adequate communication assessments, Defendants will hire communication assessors and engage a consultant to assist them in developing procedures for conducting assessments. (Doc. No. 82-3 ¶¶ 5-6.) Defendants will also issue a bulletin clarifying that teaching American

Sign Language or another form of communication to a deaf waiver participant is a service covered by the Consolidated Waiver, and, will also clarify that consultation with a speech pathologist is covered for a deaf waiver participant. (Doc. No. 82 at 10; Doc. No. 82-3 ¶¶ 10, 11.)

Moreover, the proposed settlement agreement provides for monitoring of named Plaintiff Harry M., and, systemic monitoring of Defendants' compliance with the terms of the settlement agreement. Defendant DPW will submit specified information to Plaintiffs' counsel regarding its efforts to implement the terms of the settlement agreement via quarterly reports until all objectives in the settlement agreement are met. Following the complete implementation of the proposed settlement agreement, DPW will report annually to Plaintiffs' counsel concerning DPW's ongoing progress and activities for up to three years. (Doc. No. 82 at 11.) Three years after DPW accomplishes the last objective for which a date is specified in the proposed settlement agreement, but not later than six years from the date on which the Court grants final approval to the settlement, the parties will dismiss the lawsuit without prejudice.

## II. DISCUSSION

### A. Proposed settlement

Pursuant to Rule 23(e)(2), the Court may only approve a proposed settlement agreement binding class members after conducting a fairness hearing, and finding that the terms of the agreement are "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(2). Although the decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court, the United States Court of Appeals for the Third Circuit has identified the following factors for district courts to consider when evaluating the parties'

proposed agreement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) (citation and quotation marks omitted).

After reviewing the terms of the settlement and Plaintiffs' submissions, and conducting a fairness hearing on July 12, 2013, the Court finds the proposed settlement agreement merits final approval under Federal Rule of Civil Procedure 23(e) and the relevant Girsh factors. First, were Plaintiffs to continue litigating this action rather than settling their claims, the parties would likely undertake further discovery, including expert discovery, and, likely file respective motions for summary judgment. Thus, even though this action was filed three years ago, choosing to continue litigation rather than resolving the dispute through settlement would cause considerable expense and delay. The fairly advanced stage of the proceedings also suggests that counsel appreciates the merits of this case and was able to make an informed decision about the adequacy of the proposed settlement. (Doc. No. 82 at 21.) Moreover, several class members have contacted counsel in support of the proposed settlement, which also weighs in favor of approval. (Doc. No. 21 at 20; Doc. No. 82-6.) Indeed, the proposed settlement agreement accords Plaintiffs virtually all the relief which they sought in their complaint, meaning that the benefits of settlement far outweigh the potential risks of continuing to seek relief through

litigation. Likewise, in assessing the reasonableness of the settlement in light of the attendant risks of litigation and the best possible recovery, the Court is confident that the proposed settlement agreement's benefits to class members are significant and weigh in favor of approval.

**B. Attorneys' fees**

The Court is also required to approve the amount of requested attorneys' fees in the proposed settlement agreement. See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 819 (3d Cir. 1995). Pursuant to 42 U.S.C. § 1988(b), the Court may award the prevailing party reasonable attorneys' fees. See also Fed. R. Civ. Pro. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). The starting point for determining "reasonable" attorneys' fees is the lodestar amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McKenna v. City of Phila., 582 F.3d 447, 455 (3d Cir. 2009); see also Gen. Motors, 55 F.3d at 821. The lodestar is calculated according to prevailing market rates in the community for attorneys of comparable skill, reputation, and ability. Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 199 (3d Cir. 2000). The petitioner bears the burden of showing that the fees and costs requested are reasonable by producing evidence that supports the hours and costs claimed. See In re Diet Drugs, 582 F.3d 524, 538 (3d Cir. 2009).

Plaintiffs have submitted an unopposed motion for attorneys' fees, litigation expenses, and costs in the amount of $450,000.00.[1] (Doc. No. 81 at 1.) In their brief in support, Plaintiffs

[1] Pursuant to the proposed settlement agreement, Defendant DPW will pay Plaintiffs' counsel $450,000.00 in three separate installments as follows: $200,000.00 within thirty days following the Court's final approval of the settlement agreement; $200,000.00 by June 30, 2014, and $50,000.00 by June 30, 2015. (Doc. No. 81 at 3.)

argue that the requested amount of attorneys' fees is reasonable. Plaintiffs' counsel first submit that their aggregate lodestar in this action is $672,228.00, which is based on the 1742.3 hours that they expended on this matter. (Doc. No. 81 ¶¶ 6-7.) Plaintiffs contend that this number of hours is reasonable in light of the vigorously-contested nature of this litigation. (Doc. No. 81 ¶ 7(a).) Plaintiffs have also submitted evidence supporting the hourly rates charged by counsel and used to calculate the lodestar, including counsels' resumes and evidence of market rates for similarly-qualified attorneys. (Doc. No. 81 ¶ 7(c)). Plaintiffs' litigation expenses and costs in this action totaled $110,830.85, and Plaintiffs support this figure with receipts and documents that are available upon request from the Court. (Doc. No. 81 ¶ 10.) Given that the total amount of attorneys' fees and costs requested – $450,000.00 – is significantly less than Plaintiffs' combined lodestar and litigation costs of $783,058.85, the Court finds that this reduction also weighs in favor of approval. See Wash. v. Phila. Cnty. Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996). On review, the Court finds that Plaintiffs' requested attorneys' fees and costs are reasonable.

## III. CONCLUSION

The Court approves the proposed settlement agreement, and the proposed award of attorneys' fees and costs. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HARRY M., et al.,** | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:10-cv-00922** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF PUBLIC WELFARE, et al.,** | : | |
| **Defendants** | : | |

**ORDER**

**AND NOW,** on this 20th day of August 2013, **IT IS HEREBY ORDERED THAT** Plaintiffs' motion for final approval of the proposed settlement agreement (Doc. No. 82) and Plaintiffs' motion for attorneys' fees and costs (Doc. No. 81) is **GRANTED**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania